# In the United States District Court
## for the Southern District of Georgia
### Waycross Division

DANIEL L. GRAY, III; and
ANNA R. PAYNE,

      Plaintiffs,

      v.

RANDY F. ROYAL, in his
individual and official
capacity as Sheriff, Office of
the Sheriff for Ware County,
Georgia; REBECCA WILLIAMS in
her individual and official
capacity as Deputy Sheriff,
Office of the Sheriff for Ware
County, Georgia; and WARE
COUNTY, GEORGIA,

      Defendants.

CV 515-10

## ORDER

Plaintiffs Daniel Gray, III ("Gray") and Anna R. Payne ("Payne")[1] bring suit against Defendants for recording Plaintiffs in their work area without their express consent. Gray and Payne allege that Defendants violated their right to privacy under the United States Constitution, specifically the First and Fourteenth Amendments, and 42 U.S.C. § 1983. See generally Dkt. No. 1 ("Compl."). Additionally, Plaintiffs claim violations of

---

[1] Plaintiff is now named Anna Altman. Dkt. No. 26-7, 4:9-21.

Paragraphs I, II, and V of the Georgia Constitution. Id. They
also assert state law claims for negligent retention, negligent
supervision, and intentional infliction of emotional distress.
Id. Plaintiffs seek compensatory and punitive damages. Id.

There are two pending motions presently before the Court.
First, Defendants Randy F. Royal ("Royal"), Rebecca Williams
("Williams"), and Ware County, Georgia ("Ware County")
(collectively, "Defendants") filed a Partial Motion to Dismiss,
primarily arguing that Plaintiffs failed to state a claim upon
which relief may be granted. See generally Dkt. No. 6.
Specifically, Ware County asserts that it is precluded from
being held liable pursuant to Georgia law. Id. at pp. 8, 10-11.
For their part, Royal and Williams assert that they are shielded
from liability in their official capacities under the Eleventh
Amendment. Id. at pp. 4-7, 11-15, 19. Royal and Williams
further aver that they are protected from suit in their
individual capacities by virtue of qualified immunity and
official immunity for claims asserted against them in their
individual capacity. Id. at pp. 17-20.

Second, Defendants filed a Motion for Summary Judgment
(Dkt. No. 26), reiterating the same arguments contained in their
Motion to Dismiss, but also advancing additional theories in
support of their contention that: (1) the Motion to Dismiss
should be granted; and (2) the remaining claims against Williams

AO 72A
(Rev. 8/82)                                      2

in her individual capacity should be dismissed. See generally Dkt. No. 26-1. In response, Plaintiffs filed an Opposition rebutting Defendants' arguments as to Royal and Williams but conceding that all claims against Ware County fail as a matter of law. See generally Dkt. No. 32-1.[2]

Both of Defendants' Motions are now ripe for review. Given that the parties conducted discovery, the Court will address these claims pursuant to Defendants' Motion for Summary Judgment. As to Plaintiffs' federal claims, Defendants' Motion for Summary Judgment (Dkt. No. 26) is **GRANTED**.[3] The remaining state-law claims for intentional infliction of emotional distress and negligent retention and supervision are **DISMISSED WITHOUT PREJUDICE** for lack of supplemental jurisdiction.

### Factual Background

In 2009, Royal began his term as Sheriff of Ware County. Dkt. No. 26-5, 5:25; Dkt. No. 26-7, 6:3-5. Royal upheld policies instituted by his predecessor, Sheriff McQuaig ("McQuaig"). Dkt. No. 26-4 ¶ 10. One policy, which was instituted in 2002, mandated that all incoming and outgoing telephone calls in the Office of the Sheriff would be recorded. Id. ¶¶ 5-6. McQuaig issued an order and posted copies of this new policy in several conspicuous locations throughout the

---

[2] In light of Plaintiffs' concession, all claims against Ware County are hereby **DISMISSED** and Ware County is hereby **TERMINATED** as a party-Defendant.
[3] Defendants' Partial Motion to Dismiss (Dkt. No. 6) is rendered **MOOT** by the Court's decision in this Summary Judgment Order.

AO 72A
(Rev. 8/82)

office.  Id. ¶¶ 7-8.  It was common knowledge among the Office
of the Sheriff of Ware County employees that all incoming and
outgoing telephone calls were recorded.  Id. ¶ 12.

Gray first started working for the Office of the Sheriff as
a Detention Officer in November 2001, during McQuaig's tenure as
Sheriff and before he instituted the recording policy.  Dkt. No.
26-5, 5:18-6:4.  In 2007, Payne began working at the Ware County
Sheriff's Office as an Administrative Clerk, while McQuaig was
still the Sheriff.  Dkt. No. 26-7, 5:9-18.  At the time, Payne
was assigned to work the Criminal Investigation Division
("CID").  Id. at 5:14-15.  Gray and Williams were promoted to
detective positions in the CID shortly after Royal began serving
as Sheriff of Ware County.  Dkt. No. 26-5, 6:18.

A portion of the office space of the Ware County Sheriff's
Department is dedicated to the CID.  Id. at 22:18-23; Dkt. No.
26-2, p. 2.  The CID space occupies a square-shaped space.  Id.
The CID is comprised of several offices, in addition to two
interview rooms, that are arrayed around the square.  Id.
Interviews and interrogations occur in the rooms surrounding the
CID, which are equipped with recording devices.  Dkt. No. 26-5,
36:7-25, 39:7-12.  The recording devices used to record
interviews and interrogations were capable of recording
"background noise" in the central CID area.  Id. at 39:11-12;
Dkt. No. 26-7, 18:11-25.  If the door to the interview room was

AO 72A
(Rev. 8/82)

left open, the recording device would also record conversations occurring in the central area of the CID.  Dkt. No. 26-5, 38:20-39:5.

Ware Sheriff employees could access the CID through a restricted access corridor or through the use of a special key card.  Id. at 91:13-21, 92:4-14; Dkt. No. 26-2, p. 2.  The CID also contained a desk that was available for use by anyone in the CID, id. at 26:6-12, in addition to several chairs that were used by CID detectives or non-employees waiting to be interviewed.  Id. at 31:1-8.  Inmates also frequented the CID as they were responsible for maintaining the premises.  Id. at 90:24-91:12.  Gray and Williams worked in offices immediately adjacent to the CID, id. at 23:21-24:12, while Payne worked at a partly-enclosed desk in the center of the CID.  Id. at 24:19-22, 29:11-19; Dkt. No. 26-7, 8:20-9:2.  In the central area of the CID, there was a photocopier, typewriter and telephone, all of which were available for general use.  Id. at 26:2-27:20.  One of the two open sides of Payne's desk area faced Gray and Williams' offices.  Dkt. No. 26-7, 15:1-10.  Gray, and most of the other detectives in the CID, typically worked with their office doors open.  Dkt. No. 26-5, 39:13-40:1.

On May 10, 2013, Williams hid an audio recording device in the CID.  Id. at 22:3-17; Dkt. No. 26-7, 9:7.  According to Gray, the recording device was "located directly outside of

[his] office . . . on top of a wall-mounted cabinet." Id. at 22:15-17. Williams managed to record everything occurring around the recording device for approximately one hour before it was discovered by Deputy Newman. Id. at 43:2-7, 48:21-49:1, 90:7-10. Deputy Newman did not work in the CID, but, while walking in the CID, he found the active recording device. Id. at 83:3-6, 89:24-95:5. Gray then placed the recording device in a sealed bag before giving it to Royal. Id. at 94:9-13. Royal later determined that the recording device belonged to Williams. Id. at 93:1-19.

The recording device recorded Gray and Payne speaking on their office telephones. Id. at 52:20-53:6, 54:25-55:5; Dkt. No. 26-7, 19:8-23. During the recording, Williams is heard talking on the telephone, and talking to both Gray and Payne, in addition to speaking to another female. Dkt. No. 26-5, 50:12-18, 54:7-12, 58:8-10, 68:1-16, 71:1-72:11, 76:10-17, 78:24-79:2, 80:19-22, 87:4-11. Additionally, at least three individuals who worked in other areas of the Sheriff's Office can be heard entering the CID and speaking during the recording. Id. at 78:6-16, 83:15-21, 86:5-15. Payne confirmed that all of her conversations on the recording, including her telephone conversations, were work-related conversations and none of her conversations included topics of a personal nature. Dkt. No. 26-7, 19:8-23.

AO 72A
(Rev. 8/82)

Royal punished Williams by giving her a ten-day suspension without pay and transferring her from the CID to the Magistrate Court. Dkt. No. 26-6, 100:1-101:9. Plaintiffs admit that as far as they know, only Gray and a Lieutenant listened to Williams' recording prior to it being played during the depositions in this case. Id. at 103:1-18. When asked whether Royal knew that Williams was going to record co-workers, Gray admitted that he does not "know if [Royal] knew in advance or not. [Gray had] no way of knowing that." Dkt. No. 26-5, 97:25-98:1. Payne admitted that "as far as she knows," Williams acted totally alone in recording them. Dkt. No. 26-7, 26:25-27:2. Payne resigned in December of 2013, id. at 6:6-7, while Gray resigned in June of 2013. Dkt. No. 26-5, 6:4. Plaintiffs filed suit on January 20, 2015. Dkt. No. 1.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based

AO 72A
(Rev. 8/82)

on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

### I. The Eleventh Amendment Precludes Royal and Williams from Liability for Plaintiffs' Federal Claims in their Official Capacities

Plaintiffs seek to hold Royal and Williams liable in their official capacity as "arms of the state" for their federal and state claims. See generally Compl. Defendants argue that they are precluded from suit for Plaintiffs' federal claims in their official capacity by reason of the Eleventh Amendment. Dkt. No. 26-1, pp. 15-26. Pertinently, the Eleventh Amendment prohibits the "[j]udicial power of the United States" from reaching "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court interprets this language to also prevent suits against a state brought by its own citizens. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."). The State itself need not be named in a suit to receive Eleventh Amendment immunity—the immunity

attaches to any agent or instrumentality acting as an "arm of

the state." See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir.

2003) (en banc).

A defendant does not need to be labeled a 'state officer'

or a 'state official' to receive Eleventh Amendment immunity;

rather, the party must only act "as an 'arm of the state,' which

includes agents and instrumentalities of the state." Regents of

the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997). A court

considers the following factors in determining whether an

official acts as an "arm of the state": "(1) how state law

defines the entity; (2) what degree of control the State

maintains over the entity; (3) where the entity derives its

funds; and (4) who is responsible for judgments against the

entity." Manders, 338 F.3d at 1309. In urging the Court to

find that defendants were not state actors, the Plaintiffs cite

the Eleventh Circuit's decision in Keene v. Prine, 477 F. App'x

575, 575 (11th Cir. 2012) (finding that the sheriff did not act

as an "arm of the state" when he terminated the employees in

question because the sheriff did not satisfy the Manders

factors). In urging the Court to find that Defendants were

acting as "arms of the state," Defendants cite Pellitteri v.

Prine, 776 F.3d 777, 782 (11th Cir. 2015) (explaining that the

sheriff acts as an "arm of the state" when exercising his power

to hire and fire deputies because he derives all of his law

enforcement powers from the State of Georgia "and the State has exclusive authority and control over the duties and affairs of his office"). In applying the four-factor "arm of the state" test, the Eleventh Circuit noted that its prior unpublished decision in Keene, 477 F. App'x at 575, "is inconsistent with this Court's published precedent." Pellitteri, 776 F.3d at 782. Here, Plaintiffs understandably relied heavily on Keene in arguing that employees of the Ware County Sheriff's office, in their official capacities, are not arms of the state. Dkt. No. 13-1, pp. 1-7. However, the Eleventh Circuit's subsequent, published ruling in Pellitteri is binding on this Court.

Accordingly, courts determining whether an official acts as an "arm of the state" must do so "in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Regents, 519 U.S. at 1308. Significantly, the Eleventh Circuit recently applied the Manders factors to determine that a sheriff functions as an "arm of the state" when making personnel decisions—particularly where he exercises his power to hire and fire deputies. Pellitteri, 776 F.3d at 778.

### A. Immunity as to Royal

Plaintiffs seek to hold Royal liable in his official capacity for their federal claims. Dkt. No. 32-1, pp. 11-14. The Eleventh Circuit, however, concluded that Georgia sheriffs

act as an "arm of the state" when they make employment
decisions. Pellitteri, 776 F.3d at 780 (finding that a sheriff
operates as an "arm of the state" because the "power to hire and
fire his deputies is subject to a significant amount of
oversight by the State"). In light of Pellitteri's holding that
Georgia sheriffs operate as an "arm of the state" when making
employment decisions, this Court holds that Royal was likewise
acting as an "arm of the state" when he made employment
decisions, including the decision to retain Williams as a deputy
sheriff in the office. Accordingly, the Eleventh Amendment bars
Plaintiffs' claims against Royal in his official capacity.

### B. Immunity as to Williams

Plaintiffs also set forth federal claims against Williams
in her official capacity. Dkt. No. 32-1, pp. 11-14. Similar to
the analysis supra, the Court notes that Williams, as a deputy
sheriff, is an employee of the sheriff—here, Royal—not the
county. See Manders, 338 F.3d at 1311 ("Deputies . . . are
employees of the sheriff and not the county."). Therefore, in
her official capacity as a deputy sheriff, Williams operates as
an "arm of the state." See Scruggs v. Lee, 256 F. App'x 229,
232 (11th Cir. 2007) ("As employees of the sheriff, deputies . .
. in their official capacities, are also entitled to Eleventh
Amendment immunity"). Accordingly, all of Plaintiffs' federal

claims against Williams in her official capacity are barred by

the Eleventh Amendment and Summary Judgment is thus appropriate.[4]

## II. Qualified Immunity Precludes the Federal Law Claims Brought Against Royal in his Individual Capacity but does not Preclude the Federal Law Claims Brought Against Williams in her Individual Capacity

The qualified immunity defense exists to offer "complete

protection for government officials sued in their individual

capacities if their conduct 'does not violate clearly

established statutory or constitutional rights of which a

reasonable person would have known.'" Vinyard v. Wilson, 311

F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982)). When properly applied, the doctrine

protects "all but the plainly incompetent or one who is

knowingly violating the federal law." Id. (quoting Lee v.

Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

---

[4] Pursuant to the doctrine of Ex Parte Young, an individual may sue a state (or an "arm of the state") despite the Eleventh Amendment where the claimant requests that the court grant "prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985) (citing Ex Parte Young, 209 U.S. 123, 155-56 (1908)). The Eleventh Circuit has "determined previously that requests for reinstatement [of employment] constitute prospective injunctive relief that fall within the scope of the Ex Parte Young exception and, thus, are not barred by the Eleventh Amendment." Lane v. Cent. Ala. Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014).

Here, Plaintiffs requested "reinstatement" of various employment benefits that would have accrued "up until they were forced out of their employment. . . including lost wages, medical health insurance, life insurance, and retirement benefits, [in addition to] lost transportation benefits." Compl., p. 18. Gray and Payne's request is one for damages, not for the injunctive relief of reinstatement to their former positions as Sergeant and Secretary, respectively, within the CID. Their request for lost wages is neither a request for prospective *injunctive* relief nor a request for reinstatement of their actual employment. Thus, all of Plaintiffs' claims against Defendants in their official capacities are barred by the Eleventh Amendment and Summary Judgment is thus appropriate.

AO 72A
(Rev. 8/82)

To qualify for the protection of the doctrine, a public official must first prove that she was acting within the scope of her discretionary authority at the time the alleged wrongful acts occurred. Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012). "If the defendant was not acting within [her] discretionary authority, [s]he is ineligible for the benefit of qualified immunity." Lee, 284 F.3d at 1194. To determine whether a public official acts within her "discretionary authority," she must show "objective circumstances that would compel the conclusion that [her] actions were undertaken pursuant to the performance of [her] duties and within the scope of [her] authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)). In other words, the court must determine "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'" Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) (quoting Doe v. McMillan, 412 U.S. 306, 319-20 (1973))).

The burden then shifts to the plaintiff to show that qualified immunity does not apply. Terrell, 668 F.3d at 1250.

AO 72A
(Rev. 8/82)

In determining whether qualified immunity applies, a court engages in a two-step inquiry, assessing: (1) whether the plaintiff alleged facts to establish that the officers violated constitutional rights; and (2) whether the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[5] A constitutional right is clearly established if "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). Therefore, "if the constitutional right has been clearly established, the plaintiff must demonstrate that a reasonable government actor would have known that what he was doing infringed that right." Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

### A. Qualified Immunity as to Royal

Here, it is clear that Royal was "acting within the scope of his discretionary capacity" when the alleged wrongful acts occurred. Smith, 668 F.3d at 1250. Given that the events in question occurred in the office where Royal supervised the actions of all parties, Royal acted in his discretionary capacity. As will be set forth below, Royal is not liable to

---

[5] Federal courts have discretion in deciding which prong to address first. See Pearson, 555 U.S. at 236.

Plaintiffs in his individual capacity because he did not violate their constitutional rights.

### 1. Royal did not Violate Title III of 18 U.S.C. § 2510

Plaintiffs argue that Royal can be liable pursuant to Title III because he allegedly ignored Williams' prior incidents of misconduct. Compl. ¶ 26; Dkt. No. 32-1, pp. 13-14. Royal argues that he should not be held liable under 18 U.S.C § 2511(1)(a) given that there is no evidence in the record supporting the allegation that he intentionally participated in any violations of Title III. The Court must agree. Title III specifically states that "any person who -- (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)." 18 U.S.C. § 2511(1)(a).

Here, the evidence does not support the allegation that Royal either knew that Williams intentionally placed the recording device near Plaintiffs in their work area or that he supported Williams' action of placing the recorder in a common area, which happened to be in Plaintiffs' immediate work area. Indeed, Gray admitted that he does not "know if [Royal] knew [about the recording device] in advance or not" because Gray

"has no way of knowing that." Dkt. No. 26-5, 97:25-98:1.
Plaintiffs failed to offer any evidence—by way of affidavits or
depositions—in support of their argument that Royal violated
Title III. Thus, there is no evidence in the record
demonstrating a genuine issue of material fact regarding Royal's
involvement with the placement of the audio recording device.

Moreover, there is no evidence that Royal himself placed
the recorder in the direct work area of Plaintiffs or that he
directed Williams to commit such an act. Indeed, Payne admits
that "as far as [she] know[s]" Williams acted alone in recording
Plaintiffs. Dkt. No. 26-7, 26:25-27:2. Plaintiff again failed
to offer any deposition testimony or affidavits disputing this
point. Royal then cannot be liable to Plaintiffs for a Title
III violation because there is no evidence that he had the
requisite intent to intercept Plaintiffs' conversations or that
he was involved in the placement of the audio recording device.
Accordingly, the evidence does not support a finding that Royal
violated Plaintiffs' constitutional rights in this regard.
Qualified immunity is thus appropriate as to Royal.

### 2. Royal did not Violate Plaintiffs' Right to Privacy

Royal did not violate Plaintiffs' right to privacy.
Plaintiffs seek to hold Royal individually responsible, pursuant
to respondeat superior, for Williams' actions. Dkt. No. 32-1,

pp. 11-14. It is well established "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). A supervisor may be held liable, however, if the plaintiff shows that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

A plaintiff may establish the necessary causal connection by showing "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so." Id. (internal citations omitted). Alternatively the causal connection may be established "when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (internal citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued

AO 72A
(Rev. 8/82)

duration, rather than isolated occurrences." <u>Hartley</u>, 193 F.3d at 1269.

Here, the evidence does not support the allegation that Royal directed that the recording device be placed in Plaintiffs' immediate work area or that he participated in the placement of the recording device. Indeed, Plaintiffs failed to proffer any evidence showing otherwise. Plaintiffs also allege that Royal "had established a pattern and practice of ignoring violations of the law and procedures," Compl. ¶ 28, yet the evidence fails to show even an iota of evidence supporting this contention. Plaintiffs acknowledge that Gray disciplined Williams with regard to the audio recording incident, dkt. no. 26-6, 100:1-101:25, but they believe that the punishment was not enough. <u>Id.</u> at 101:8-17. Whether Plaintiffs were satisfied with the punishment is immaterial—Plaintiffs failed to produce any evidence of Williams' prior incidents of alleged misconduct to establish a "history of widespread abuse." <u>Cottone</u>, 326 F.3d at 1360. Without such a showing, the Court cannot find evidence supporting Plaintiffs' argument that Royal violated Plaintiffs' § 1983 right to privacy. In light of the above, Plaintiffs failed to create an issue of material fact regarding the matter of Royal's alleged involvement with the placement of the audio recording device, nor was evidence produced which would support an allegation of a custom or policy. Accordingly, Royal did not

violate Plaintiffs' § 1983 privacy rights and he is thus protected from liability in his individual capacity by qualified immunity.

## B.   Qualified Immunity as to Williams

Here, the undisputed evidence reveals that Williams intentionally placed a recording device in a common area of the CID.  Dkt. No. 26-5, 22:3-17; Dkt. No. 26-7, 9:7.  At the time of the incident, Williams was a Deputy Sheriff, working as a detective.  Dkt. No. 26-5, 7:12-14.  That a Deputy Sheriff's duties would include recording the conversations of co-workers—without their knowledge or consent—strains credulity.  It is clear to the Court that surreptitiously recording co-workers is not a duty typically carried out by a deputy sheriff, nor was it within her authority to commit such an act.[6]  The Court notes that the Office of the Sheriff of Ware County had a policy of recording the conversations of all employees on work telephones—a policy that was openly announced by the Sheriff and broadly publicized within the office when it went into effect.  Dkt. No. 26-4 ¶¶ 5-8.  Williams, by contrast, did not have a supervisory role at the Office of the Sheriff, and, thus, she had no power or authority to establish such a policy.  Moreover, she never announced her intention to record her co-workers—instead she

---

[6] At this juncture it is immaterial whether Plaintiffs had an expectation of privacy in their conversations: the relevant inquiry is whether recording the conversations of co-workers was a part of Williams' job duties.  Harbert Int'l, Inc., 157 F.3d at 1282.

situated the recording device to avoid detection, successfully recording her co-workers for approximately one hour prior to the recording device's discovery. Dkt. No. 26-5, 22:3-17, 48:21–49:1; Dkt. No. 26-6, 9:7.

In viewing the facts in the light most favorable to the non-moving party, Williams did not act within her discretionary authority when she surreptitiously placed the recording device to record the conversations of her co-workers. Williams' arguments supporting the application of qualified immunity to the instant matter are thus unavailing. Accordingly, the doctrine of qualified immunity does not preclude Williams from being held individually liable for Plaintiffs' Title III and § 1983 claims.

## III. The Federal Claims Asserted Against Williams in her Individual Capacity Fail

### A. Title III Standard

Plaintiffs allege that Williams violated Title III of 18 U.S.C. § 2510. That section, in relevant part states:

> Except as otherwise specifically provided in this chapter any person who – – (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(a).  The legislative history of the amended

Electronic Communications Privacy Act ("ECPA") defines the

intent required under the ECPA, explaining that "[a]n

'intentional' state of mind means that one's state of mind is

intentional as to one's conduct or the result of one's conduct

if such conduct or result is one's conscious objective."  S.

Rep. No. 99-541, at 23 (1986), reprinted in 1986 U.S.C.C.A.N.

3555, 3577.

To prove a violation of Title III, however, the claimant

must prove that "the person uttering the words has a reasonable

or justifiable expectation of privacy." United States v.

McKinnon, 985 F.2d 525, 527 (11th Cir. 1993).  To make this

showing, courts analyzing an 'expectation of privacy' claim

utilize a two-step approach, assessing: (1) "whether [plaintiff]

had a subjective expectation that his conversations were free

from interception," and (2) "whether that expectation was

objectively reasonable." Walker v. Darby, 911 F.2d 1573, 1578

(11th Cir. 1990) (citing 18 U.S.C. §§ 2510(2), 2520).  The Court

also notes that a privacy claim will not succeed where the

defendant was a party to the intercepted communication. See 18

U.S.C. § 2511(2)(c) ("It shall not be unlawful under this

chapter for a person acting under color of law to intercept a

wire, oral, or electronic communication, where such party is a
party to the communication.").[7]

## B. 42 U.S.C. § 1983 Claim for a Violation of the Fourth Amendment Invasion of Privacy Standard

Section 1983 provides a federal cause of action for a
violation of an individual's civil rights. See Gomez v. Toledo,
442 U.S. 635, 638-40 (1980). The section itself, however, is
not "'a source of substantive rights,' instead, it provides 'a
method of vindicating federal rights elsewhere conferred.'"
Graham v. Connor, 490 U.S. 386, 394 (1989) (quoting Baker v.
McCollan, 443 U.S. 137, 144 (1979)). To establish a § 1983
claim, a plaintiff must show "the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws;"
done "by any person acting under the color of state law."
Gomez, 446 U.S. at 638. It is undisputed that Williams, a
deputy sheriff at the Office of the Sheriff of Ware County, was
acting under color of state law.

The Fourth Amendment guarantees "[t]he right of the people
to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures." U.S. Const. amend
IV. Application of the Fourth Amendment's privacy right,
however, turns on "whether the person invoking its protection

---

[7] The Court notes that a "party to a communication" under § 2511(2)(d) is
defined as "a party who is present when the oral communication is uttered and
need not directly participate in the conversation." Pitts Sales, Inc. v.
King World Prods., 383 F. Supp. 2d 1354, 1361 (S.D. Fla. 2005).

can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979); see also McKinnon, 985 F.2d at 527. The inquiry into whether a person has a 'reasonable' expectation of privacy is two-fold: (1) "whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy;'" and (2) "whether the individual's subjective expectation of privacy is one 'that society is prepared to recognize as reasonable.'" Smith, 442 U.S. at 740. Additionally, an individual does not violate a privacy right if she records a conversation that she is a party to without the knowledge or consent of the other party. See U.S. v. Shields, 675 F.2d 1152, 1158 (11th Cir. 1982) (noting that the principle underlying this concept "is that when one reveals information to an individual, one takes the risk that one's confidence in that individual is misplaced); see also Hoffa v. United States, 385 U.S. 293, 302 (1966) (holding that the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it").

## C. Application[8]

### 1. Was Williams a Party in the Recording?

---

[8] As developed above, the standard for assessing a Title III violation is the same as a violation of privacy. In light of the fact that the standards for both claims involve analysis of the same elements, the Court will address both claims simultaneously, below.

24

A violation of the right to privacy or Title III does not occur if the offending party was a party to the conversation being recorded. See O.C.G.A. § 16-11-66 ("Nothing in Code Section 16-11-62 shall prohibit a person from intercepting a wire, oral, or electronic communication where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception"). Here, Williams placed the recording device in the CID and she remained near it, speaking on the telephone or talking to others in the CID. See, e.g., Dkt. No. 26-5, 50:12-18, 54:7-12, 58:8-10, 68:1-16, 71:1-72:11, 76:10-17, 78:24-79:2, 80:19-22, 87:4-11. To the extent Plaintiffs aver that Williams violated their privacy, such a right does not exist where Williams participated in conversations with either or both Plaintiffs on the recording.

### 2. Did Plaintiffs have an Actual, Subjective Expectation of Privacy?

To succeed on either a Title III or invasion of privacy claim, Plaintiffs must establish that their "conduct exhibited a subjective expectation of privacy." McKinnon, 985 F.2d at 527. "The subjective prong is a factual inquiry," United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir. 1987), and "requires that a person exhibit an actual expectation of privacy," United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007). In the

context of a Fourth Amendment invasion of privacy claim, Plaintiffs must show that they sought "to preserve [something] as private." Smith, 442 U.S. at 740. When interpreting this requirement pursuant to the contours of Title III, this Court has held that "unless something is said to lead a listener to believe that statements are private (e.g. 'just between you and me,' 'off the record,' or 'can we discuss this matter in private?') such statements do not qualify as 'oral communications' under the Wiretap Act." Pattee v. Ga. Ports Auth., 512 F. Supp. 2d 1372, 1377 (S.D. Ga. 2007).

Here, neither Plaintiff, during the course of the recording, said anything to indicate that the contents of their speech included private communications. Indeed, much of the speech in question occurred on office telephones—where they did not have an expectation of privacy, dkt. no. 26-2, p. 5—and concerned office affairs. Dkt. No. 26-5, 52:20-53:6, 54:25-55:5; Dkt. No. 26-7, 19:8-23. Moreover, Plaintiffs failed to phrase their speech in such a way so as to articulate that they were communicating confidential matters. Plaintiffs also did not take any steps to preserve their privacy. Rather, Gray worked with his office door open during the entirety of the recording, as was his normal practice, dkt. no. 26-5, 49:11-16, 56:14-16, and Altman spoke at a normal volume while taking phone calls at her desk, which was situated in the middle of the CID

AO 72A
(Rev. 8/82)

and next to Williams' office.  Id. at 24:19-22, 29:11-19; Dkt. No. 26-7, 8:20-9:2.

The Court further notes that the recorder was situated in the common area of the CID—a place where Plaintiffs, other co-workers, and non-employees congregated.  Dkt. No. 26-5, 26:6-12, 31:1-8, 90:24-91:12.  Had Plaintiffs wished to "preserve [something] as private," Gray could have closed his office door or Altman could have used a phrase such as "just between you and me," which would have clearly communicated their desire to maintain the privacy of their speech.  Pattee, 512 F. Supp. 2d at 1377.  That did not happen here.  Accordingly, the undisputed facts show that Plaintiffs did not have a subjective expectation of privacy.

### 3. Was Plaintiffs' Expectation of Privacy Reasonable?

The Court must next assess whether Plaintiffs' expectation of privacy was reasonable.  McKinnon, 985 F.2d at 527.  The Court notes that "[l]egitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property or to understandings that are recognized and permitted by society." Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978).  "Thus, an individual asserting Fourth Amendment rights 'must demonstrate that he personally has an expectation of privacy in the place

searched, and that his expectation is reasonable.'" United States v. Suarez-Blanca, No. 1:07-CR-0023-MHS/AJB, 2008 WL 4200156 (N.D. Ga. Apr. 21, 2008) (citing Minnesota v. Carter, 525 U.S. 83, 88 (1998)). Moreover, whether an individual has a reasonable expectation of privacy is a question of law, not fact. McKennon, 814 F.2d at 1543.

Here, Plaintiffs do not have a reasonable expectation of privacy. Multiple reasons compel that conclusion. As an initial matter, "public employees' expectations of privacy in their offices, desks, and file cabinets . . . may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." O'Connor, 480 U.S. at 717; see also U.S. v. Novak, 531 F.3d 99, 101 (1st Cir. 2008) ("A telephone call can be monitored and recorded without violating the Fourth Amendment so long as one participant in the call consents to the monitoring"). Thus, Plaintiffs do not have an expectation of privacy in an office where their telephone calls are routinely recorded pursuant to established office policy. See U.S. v. Mitchell, No. 3:11-CV-248(S1)-J-34TEM, 2013 WL 3808152, at *10 (M.D. Fla. July 22, 2013). Here, a number of the statements at issue were made by Plaintiffs while speaking on office telephones. Dkt. No. 26-5, 52:20-53:6, 54:25-55:5; Dkt. No. 26-7, 19:8-23. Plaintiffs, by virtue of their continued employment at the Office of the Sheriff after the telephone-recording

policy went into effect consented to a reduced scope of privacy while speaking on office telephones. To the extent that Plaintiffs claim that their right to privacy was violated, they do not have an expectation of privacy as to their speech while using office telephones.

An additional and more comprehensive reason requiring Summary Judgment is that Williams placed the recording device in a common-area of the office that is frequented by both employees and non-employees alike. Indeed, actual inmates are permitted access to the very space in which the recorder was placed. Dkt. No. 26-6, 90:24-91:12. Plaintiffs, therefore, do not have a reasonable expectation of privacy in such a common area. See O'Connor, 480 U.S. at 718 (explaining that "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable"); see also Tancredi v. Malfitano, 567 F. Supp. 2d 506, 512 (S.D.N.Y. 2008) (holding that "society is not prepared to recognize an expectation of privacy at the front desk of a police station as reasonable"); cf. U.S. v. Whorton, 280 F.3d 1328, 1330 (11th Cir. 2002) (finding that one should not expect privacy in the common areas of an apartment building, given that they were "open and accessible not only to all the many tenants and their visitors, to the landlord and all its employees, to workers of various

types, and to delivery people of all kinds, but also to the public at large").

Here, the CID is a central area open to employees, inmates, and members of the public alike. Dkt. No. 26-5, 26:6-12, 31:1-8, 90:24-91:12. The Court also notes the presence of two interrogation rooms that were accessible from the common area. Dkt. No. 26-2, p. 2. Both of those rooms were equipped with recording devices that, when turned on, would routinely pick up "background noise," including conversations occurring in the common area. Dkt. No. 26-5, 39:11-12; Dkt. No. 26-7, 18:11-25. Moreover, Williams' office was right next door to Gray's, and Altman's desk was right by Williams' door. Dkt. No. 26-7, 15:1-10. Williams worked beside them for years—she was undoubtedly privy, during that time, to both their confidential and work concerns, given the situation of her office. Plaintiffs' argument that Williams invaded their privacy thus fails as a matter of law. Given Williams' placement of the recorder in the CID—a place where Plaintiffs both knew and anticipated that they could be recorded—Plaintiffs' argument that they had a reasonable expectation of privacy fails. Accordingly, summary judgment is appropriate as to both the Title III and 42 U.S.C. § 1983 violation of privacy claims.

**IV. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' Remaining State Law Claims**

AO 72A
(Rev. 8/82)

Although Plaintiffs set forth state law claims for intentional infliction of emotional distress and negligent retention and supervision, a federal court has discretion as to whether to hear supplemental state law claims. See 28 U.S.C. § 1367. Courts are encouraged to avoid exercising supplemental jurisdiction when original jurisdiction is lacking. 28 U.S.C. § 1367(c)(3) (allowing a court to decline to exercise supplemental jurisdiction over a claim over which it has supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."); see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). Here, the Court granted Defendants' Motion for Summary Judgment as to Plaintiffs' federal claims. Because no federal cause of action remains in this suit, Plaintiffs' state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. No. 26) as to Plaintiffs' federal claims is **GRANTED**. Given the Court's ruling on the Summary Judgment Motion, Defendants' Partial Motion to Dismiss (Dkt. No. 6) is hereby rendered **MOOT**, Plaintiffs' state law claims are hereby

AO 72A
(Rev. 8/82)

**DISMISSED WITHOUT PREJUDICE,** and all claims against Ware County are **DISMISSED.** The Clerk of Court is **DIRECTED** to enter the appropriate judgment and to close this case.

    **SO ORDERED,** this 31ST day of March, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)